The next case on the calendar is Hermes v. Swain. Good morning. May it please the court, my name is Christopher Hager. I'm the attorney for Matthew Swain, the appellant. This appeal presents this court with an opportunity to address the issue of diversity of citizenship and a look-through under the U.S. Supreme Court's decision of Vaden. This is throughout the party's papers before the court. It was not addressed by Judge McMahon below, when she granted Hermes' petition to compel my client's New Jersey law against discrimination case, which was venued at that time in the New Jersey Superior Court, into arbitration in New York City. Well, in fairness to Judge McMahon, it was not addressed because it wasn't raised. Now, that doesn't mean it's waived because it's a jurisdictional question, but I just wanted to make clear, Judge McMahon, no one called this argument to Judge McMahon's attention, right? Are you referring to the Vaden argument, Your Honor? Yes. Yes. I 100 percent agree with that. And respectfully, I did not make an appearance on Mr. Swain's behalf before Judge McMahon because it was my position then, as it is my position at this very second, that there is no jurisdiction in the Southern District of New York over Matthew Swain or his New Jersey law against discrimination case. No, in persona. The result of your position is that if there is a state case that relates to the matter, that a defense to arbitration would be certainly bringing in a nondiverse party in the state case and would defeat the purposes of arbitration, correct? I'm sorry, Your Honor. I didn't quite understand that. If you anticipate there's an arbitration provision and you're in a situation such as Mr. Swain was in, then the main thing you want to do is find a nondiverse plaintiff — a nondiverse defendant and sue that nondiverse defendant because then there will be no federal jurisdiction. Sure. Under your scenario. If that was the situation, that might work, but Matthew Swain never signed an arbitration agreement. I know, but you're asking — I don't know how we would fashion the rule to carve out your case from the proposition that I just mentioned. But let me ask one other question. Sure. And that is, Vaden itself, there was a look-through permitted to determine whether or not there was federal question jurisdiction and whether or not there was an effective preemption by virtue of the defense that was going to be raised. Right. And it didn't have to do with whether or not there was diversity or not. Did not. Absolutely not. And so why would we want to extend Vaden to that — to this case? If I can — It would be an extension. It would, Your Honor. In this circuit, and respectfully, we gave citation, and I know it's to a Virginia District Court judge, but she did a great job talking about the ability — Okay. Whatever it may be, I mean, she wrote about the exact issue Your Honor is talking about, and she spoke about how Vaden did have that reach. And if I may, there are some quotes from Vaden that support the proposition of reaching the diversity of citizenship issue. And this is what this Court did in the Dozier decision, which took Vaden, which is a Section 4 FAA holding, and applied it to Section 10 under the Federal Arbitration Act. So it did take Vaden and put it somewhere else, extended it. But in Vaden itself, the Court wrote the entire actual controversy between the parties, as they have framed it, would be litigated in federal court. The entire actual controversy between the parties. Artful dodges by a Section 4 petitioner should not divert us from recognizing the actual dimensions of that controversy. And finally, at Section 4 of the Federal Arbitration Act, it does not give, in this case, Hermes, license to recharacterize an existing controversy or manufacture a new controversy in an effort to obtain a federal court's jurisdiction. And that's what happened. And Vaden says you have — Is there a single reference in Vaden to diversity jurisdiction? No, Your Honor. And I'm not trying to be fast and loose with that. And, you know, so your argument is the same principles that animated Vaden should apply here. It is that. And it's the Eighth Circuit. Okay? So — and this is in my papers. There's a North Port decision. And that said no to what it is that I'm talking about now. And we already have authority that precludes your position unless Vaden provides a reason why we should overturn our previous precedent. That's right. And I believe you're referring to DeStejo? DeStejo, yeah. I agree with that, Your Honor. And the Supreme Court does give you that authority because I believe it was a Fifth Circuit decision, Fitch. I mean, I'm doing my best to remember these — by memory these case names. But I know that the Fifth Circuit decision was the basis upon which DeStejo talked about the face of the petition is as far as you go to look for the parties to determine diversity. And — But as you say, the Eighth Circuit has already rejected your argument with regard to Vaden having undercut the earlier position of maybe all the circuits that you don't look through in a diversity case. I don't disagree with that, Your Honor. And what did — how did the Eighth Circuit get it wrong? Well, the Eighth Circuit — and you're talking about the North Port case — the Eighth Circuit got it dead wrong because the Eighth Circuit subsequently and Goodner really questioned it without overruling North Port and said North Port relied on the Moses Crane or cane, whatever the U.S. — The Moses Crane Hospital? Yeah. And said that North Port relied on that U.S. Supreme Court case. But that U.S. Supreme Court case didn't deal with diversity jurisdiction at all. And if you read North Port itself, it's sort of limited how the Moses case dealt with that diversity question. So in Goodner, subsequent the Eighth Circuit to its earlier North Port decision, they said that's what we said for that jurisdictional question on diversity. But amount in controversy jurisdiction is, under Vaden, reachable. They didn't go to the diversity of citizenship, but they said amount in controversy jurisdiction is within the ambit of Vaden. So Goodner cracked the door open. It didn't expressly overrule North Port. I respectfully submit that this Court is not bound, obviously, by what North Port said, especially when Goodner, the very circuit that decided North Port, called it into question shortly thereafter. So that's why I think North Port is a rigid reading of Vaden, that this circuit and Doerscher didn't go down that road. It looked at Vaden as expanding the Federal Arbitration Act and applied Vaden to a different section than Section 4. So respectfully, that's why I think the North Port decision from the Eighth Circuit was wrong. And the petition by Hermes, respectfully, was based on diversity of citizenship. And I know the Court's familiar with the fact that I have an individual defendant who was not named for any jurisdictional tricks. I mean, this isn't Your client isn't. But what about the other defendant? That's what I'm talking about. Oh, yeah. Okay. That's exactly what I'm talking about. He's sued because he participated in this harassment. Absolutely. He aided and abetted. And that's an LAD, New Jersey Recognized Cause of Action, different than Title VII. This is in New Jersey law. So that's why he's in that case. So the diversity of citizenship basis on the face of the petition that was presented to Judge McMahon is only by Hermes. Okay? So Bautista is a named defendant in the State Court case. That's my feeding diversity issue. But then when we look at the opposition brief that Hermes submits to this court, they say the petition's focus was on the party's dispute. Now, no, it wasn't. The petition was based on diversity of citizenship. But I think now Hermes realizes they made a mistake, whether intentional or otherwise, to my client's prejudice. And on page 44 of their That's a federal question, right? That's the Vaden case. Sua Sponte, I believe, I don't think Judge McMahon needs to, and I respect that she wasn't given the Vaden case. I didn't file any papers. Sua Sponte, I think there's a responsibility when you're looking to compel an employee's employment discrimination case into arbitration. I gave an EEOC blurb and a footnote about the to be free from workplace discrimination. I believe that a southern district judge like Judge McMahon has a Sua Sponte responsibility to make sure I'm doing the right thing here. And the Vaden case is a leading case on the question. And if what Hermes argues in their opposition is true, which is that it was the dispute, not what they said was the basis, being diversity of citizenship, then we go back down to New Jersey right away, because there's no federal question. This is a pure state law case, pure and simple. So we made a motion for judicial notice, Your Honors, and I did do that because there are representations in Hermes papers to the law division judge in New Jersey where they specifically say that Bautista is a necessary and indispensable party. I use those Rule 19A words with purpose, obviously, because they say he's a third party beneficiary. He's nowhere, anywhere on the Hermes dispute resolution procedure that they say my client signed. So Bautista's name isn't on there, but he's a third party beneficiary. So right away, you're raising issues in the state court matter. That's why I filed a judicial notice motion, which this- Yes, we have those papers before us, and we've taken a look at them. Do you want to use the remainder of your time now? I know you reserved two minutes. Thank you, Your Honor. Very much. Good morning, Your Honors. Lawrence Sandak, Proscauer Rose for Hermes of Paris. The position taken by Mr. Swain on this appeal would, if adopted, fatally undermine the FAA. Those words aren't my characterization. Fatally undermine are words used by this court in the DiSteo case to describe the result of construing the parties under Section 4 of the FAA to mean the parties in the underlying state court lawsuit. That's because it's just too easy for a state court plaintiff to destroy federal diversity through joinder of a non-diverse defendant, and that's exactly what happened here. While Mr. Swain characterizes Mr. Bautista as a supervisor and a member of Hermes' upper management in his state court complaint, Mr. Bautista was not Mr. Swain's supervisor. Mr. Swain supervised Mr. Bautista. The exact opposite is true. Mr. Swain was the head of the Short Hill store, and Mr. Bautista worked for him, and the allegation of upper management is simply not true. Is Mr. Bautista going to be included in the arbitration that you are bringing? That's unclear. The entire matter was sent to arbitration by Judge McMahon, and under the rules of the AAA, the employment dispute rules, the jurisdiction of the arbitrator is up to the arbitrator. If he's brought in, does that affect the ability of the arbitration to proceed? If he's brought in, in effect, by the other side as a defendant? That's entirely up Mr. Swain. If he's brought in, Mr. Bautista's position will be that he belongs in arbitration. I don't know what Mr. Swain's position will be, but that's going to be up to the arbitrator to decide. What Judge McMahon decided is, here's a dispute. It's subject to arbitration. There is a signed arbitration agreement. By the way, there was no evidence submitted that it was not signed, not one scintilla of evidence that it was not signed. That argument wasn't even made. We presented handwriting exemplars to Judge McMahon. The other point with regard to Mr. Bautista is that if you look at the complaint, the only specific allegation against him is that either he or someone else made slurs against Mr. Swain. He or someone else. So the substance of the complaint against Mr. Bautista is really a whole lot of nothing. And yet, Mr. Swain is arguing here that his ill-founded and vacuous allegations against Mr. Bautista are reason enough to defeat FAA jurisdiction and to deny Hermes its federal statutory right to compel arbitration. And that's exactly the outcome this Court cautioned against in d'Esteo. And as a doctor's associates against Hamilton, this Court held that as with any federal action, diversity of citizenship under the FAA is determined by reference to the parties before the district court, not the parties in a state court action. And no other appellate court has ever held to the contrary, not even decisions which have been rendered post-Vaden. And those decisions are all correctly decided because the Supreme Court in Vaden expressly limited its holding to federal question jurisdiction, not to diversity jurisdiction. Applying Vaden's look-through approach to diversity jurisdiction would have precisely the opposite effect intended by the Supreme Court, which was to expand the opportunities to utilize the federal courts to compel arbitration. Requiring a look-through for diversity jurisdiction would essentially eviscerate that avenue of subject matter jurisdiction, limiting access to the federal courts and substantially undermining the strong federal policy favoring arbitration. Mr. Swain does indeed cite the- If it would be open to Hermes, would it not to move, and maybe it did, in the New Jersey Court to compel arbitration or to stay that case pending arbitration? That was an option available, but the reason Hermes went to federal court is they exercised their rights under the FAA, and the FAA says, you know, there is a location of the arbitration set forth in the agreement, and that's New York. So under the FAA, you go into the Southern District, you make your motion to compel. It's entirely unclear whether a state court in New Jersey would have ordered the parties to arbitrate in New York. It's just, I mean, it's an anomaly, I suppose, but it's one we may want to pay attention to, that Congress did not provide, you know, it's our policy to encourage arbitration, and you're saying it's our policy to encourage access to the federal courts to get arbitration, and yet Congress chose not to create federal question jurisdiction under the FAA, which you could easily have done. Yes. So that does somewhat undermine the notion that whenever there's a jurisdictional question in an arbitration case, we should somehow resolve it in favor of federal jurisdiction, look through when that will increase federal jurisdiction, don't look through when not looking through will increase federal jurisdiction, all in support of a statute where Congress chose not to give full federal jurisdiction. Yes, but back in the 1920s when the statute was passed, the whole purpose was to say the federal courts will enforce arbitration because of judicial hostility toward arbitration in the federal and the state courts. So the purpose was to encourage arbitration. I welcome any questions. Thank you, Your Honors. Very quick, the court clearly grasps the issues. There is no discovery, there is no record about Lorenzo Bautista. The New Jersey law is extremely broad in how it construes and applies supervisor. It has rejected federal Title VII and Supreme Court law, but that is an issue, as Judge Lynch suggested, that could have been possibly explored in the state court, which is where this case should be returned with the Southern District decision in order vacated respectfully, and the petition filed in the Southern District dismissed with prejudice. Thank you very much. Thank you both for your arguments. We'll take it under advisement.